http://www.va.gov/vetapp16/Files4/1630510.txt

Citation Nr: 1630510 
Decision Date: 07/29/16 Archive Date: 08/04/16

DOCKET NO. 09-19 963 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Denver, Colorado

THE ISSUE

Entitlement to a rating in excess of 50 percent for service-connected posttraumatic stress disorder (PTSD), prior to March 17, 2013.

REPRESENTATION

Veteran represented by: Disabled American Veterans

WITNESSES AT HEARING ON APPEAL

Veteran and his spouse

ATTORNEY FOR THE BOARD

K. K. Buckley, Counsel

INTRODUCTION

The Veteran served on active duty from March 1964 to March 1968. Service in the Republic of Vietnam is indicated by the record. The Veteran is the recipient of the Purple Heart Medal.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a June 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Denver, Colorado.

In May 2013, the Veteran presented sworn testimony during a personal hearing in Denver, which was chaired by the undersigned. A transcript of the hearing has been associated with the Veteran's VA claims file.

The October 2013 Board decision denied a rating in excess of 30 percent for the Veteran's PTSD. The Veteran appealed the Board decision to the United States Court of Appeals for Veterans Claims (Court). A March 2014 Joint Motion For Partial Remand (Joint Motion) requested that the Court vacate only that part of the Board's October 2013 decision, which denied entitlement to a rating in excess of 30 percent for the Veteran's PTSD. In March 2014, the Court issued an Order that granted the Joint Motion.

In July 2014, the Board remanded the Veteran's claim for additional development. In a July 2015 decision, the Board granted a rating of 50 percent for service-connected PTSD prior to February 22, 2008, but denied a rating in excess of 50 percent at any time prior to March 17, 2013. The Veteran appealed the denial of a rating in excess of 50 percent for PTSD to the Court. In April 2016, the Court partially vacated the Board's July 2015 decision, and remanded the issue of entitlement to an increased rating for PTSD in excess of 50 percent prior to March 17, 2013 for appropriate action, pursuant to an April 2016 Joint Motion for Partial Remand.

FINDINGS OF FACT

1. Prior to June 17, 2011, the Veteran's PTSD with MDD was manifested by occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks.

2. For the period of June 17, 2011, to March 17, 2013, the Veteran's PTSD with MDD was manifested by occupational and social impairment, with deficiencies in most areas.

3. Throughout the appeal period, the service-connected PTSD with MDD does not present a disability picture so unusual or exceptional as to render impractical application of the schedular rating standards.

CONCLUSIONS OF LAW

1. Prior to June 17, 2011, the criteria for the assignment of a disability rating in excess of 50 percent for PTSD with MDD have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.3, 4.7, 4.130, Diagnostic Code (DC) 9411 (2015).

2. From June 17, 2011, to March 17, 2013, the criteria for a disability rating of 70 percent, but no higher, for PTSD with MDD are met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 4.3, 4.130, DC 9411 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

The Board notes the enactment of the Veterans Claims Assistance Act of 2000 (VCAA); Pub. L. No. 106-475, 114 Stat. 2096 (2000), in November 2000. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107 (West 2014). To implement the provisions of the law, VA promulgated regulations codified at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015). The VCAA and its implementing regulations provide that, upon the submission of a substantially complete application for benefits, there is an enhanced duty on the part of VA to notify a claimant of the information and evidence needed to substantiate a claim, and the duty to notify the claimant of what evidence will be obtained by whom. 38 U.S.C.A. § 5103(a) (West 2014); 38 C.F.R. § 3.159(b) (2015). In addition, they define the obligation of VA with respect to its duty to assist a claimant in obtaining evidence. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c). (The Board notes that 38 C.F.R. § 3.159 was revised, effective May 30, 2008. See 73 Fed. Reg. 23353-56 (April 30, 2008). The amendments apply to applications for benefits pending before VA on, or filed after, May 30, 2008. The amendments, among other things, removed the notice provision requiring VA to request the claimant to provide any evidence in the claimant's possession that pertains to the claim. See 38 C.F.R. § 3.159(b)(1).)

With respect to the increased rating claim, a pre-decisional notice letter dated in March 2008 complied with VA's duty to notify the Veteran. In particular, this letter apprised the Veteran of what the evidence must show to establish entitlement to the benefit, what evidence and/or information was already in the RO's possession, what additional evidence and/or information was needed from the Veteran, what evidence VA was responsible for getting, and what information VA would assist in obtaining on the Veteran's behalf. The letter also notified the Veteran of the criteria for assigning a disability rating and an effective date. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). In addition, the letter informed the Veteran that, should an increase in disability be found, a disability rating will be determined by applying relevant Diagnostic Codes, which typically provide for a range in severity of a particular disability from noncompensable to as much as 100 percent (depending on the disability involved), based on the nature of the symptoms of the condition for which disability compensation is being sought, their severity and duration. See Vazquez-Flores v. Peake, 22 Vet. App. 37 (2008), vacated and remanded sub nom. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009). Accordingly, the duty to notify is satisfied.

With respect to VA's duty to assist, the Veteran's service treatment records (STRs), and VA and private treatment records have been obtained and associated with the claims file. The Veteran was also afforded pertinent VA examinations in March 2008 and June 2011. To that end, when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The VA examinations obtained here are collectively sufficient, as the examiners considered all of the pertinent evidence of record, including the statements of the Veteran, and provided explanations for the opinion stated as well as the medical information necessary to apply the appropriate rating criteria. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination with respect to the pending claim has been met. 38 C.F.R. § 3.159(c)(4).

In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the Court held that 38 C.F.R. § 3.103(c)(2) requires that the Veterans Law Judge who conducts a hearing fulfill two duties to comply with the above regulation. These duties consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. The undersigned set forth the matter to be discussed at the hearing, and sought to identify any pertinent evidence not currently associated with the claims file that might have been overlooked or was outstanding that might substantiate the claim. The Veteran has not asserted that VA failed to comply with 38 C.F.R. § 3.103(c)(2), nor has he identified any prejudice in the conduct of the Board hearing. As such, the Board finds that consistent with Bryant, there is compliance with the duties set forth in 38 C.F.R. § 3.103(c)(2) and that the Board can adjudicate the claim based on the current record.

II. Analysis

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities. 38 C.F.R. Part 4. The Board determines the extent to which a veteran's service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, and the assigned rating is based, as far as practicable, upon the average impairment of earning capacity in civil occupations. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 4.1, 4.10. Where there is a question as to which of two ratings should be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

In general, when an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). However, staged ratings are also appropriate in any increased rating claim in which distinct time periods with different ratable symptoms can be identified. Hart v. Mansfield, 21 Vet. App. 505 (2007). The analysis in this decision is, therefore, undertaken with consideration of the possibility that different ratings may be warranted for different time periods.

PTSD is evaluated pursuant to 38 C.F.R. § 4.130, DC 9411. Under this formula, a 50 percent evaluation is for assignment when there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty establishing effective work and social relationships.

A 70 percent evaluation is contemplated for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); inability to establish and maintain effective relationships.

A 100 percent evaluation is warranted when there is evidence of total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to be able to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time and place; memory loss for names of close relatives, own occupation or name.

The Global Assessment of Functioning (GAF) is a scale that is used to assess the Veteran's psychological, social, and occupational functioning on a hypothetical continuum of mental health illness. See Carpenter v. Brown, 8 Vet. App. 240, 242 (1995); Richard v. Brown, 9 Vet. App. 266, 267 (1996) (citing DSM-IV). As will be discussed below, the Veteran has been assigned GAF scores ranging from 58 to 70 as determined by VA treatment providers and examiners. These scores are indicative of mild to moderate impairment. GAF scores of 51 to 60 reflect more moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). 

The Veteran was initially granted service connection for PTSD in April 1998 and was assigned a rating of 30 percent. As noted in the July 2015 Board decision, the present appeal ensued following the Veteran's July 30, 2007, claim for an increased rating for PTSD. The Veteran is currently in receipt of a 50 percent rating for PTSD with MDD prior to March 17, 2013, and a rating of 100 percent, effective March 17, 2013.

After having carefully reviewed the record, and for reasons explained in greater detail below, the Board concludes that a rating in excess of the assigned 50 percent rating is not warranted prior to June 17, 2011; however, a rating of 70 percent, but no higher, is warranted under the schedular criteria from June 17, 2011, the date of a VA examination documenting worsening psychological symptoms.

Initially, in the July 2015 rating decision that implemented the July 2015 Board decision, the AMC granted a 50 percent rating for PTSD back to May 1, 1997. However, as noted in the July 2015 Board decision, the Veteran's claim for an increased rating was received on July 30, 2007. Accordingly, pursuant to 38 C.F.R. § 3.400(o)(2), the appeal period currently before the Board is dated from the one year look-back prior to the date of claim, July 20, 2006. Any prior period is not currently before the Board.

Before undertaking analysis, it is notable that the Veteran is service-connected for PTSD and MDD. The Board is precluded from differentiating between symptomatology attributed to a nonservice-connected disability and a service-connected disability in the absence of medical evidence which does so. Mittleider v. West, 11 Vet. App. 181 (1998). As such, the Board shall consider all psychiatric symptomatology to be attributable to the Veteran's PTSD with MDD. Doing so results in no prejudice to the Veteran since it means that the evidence in its entirety will be reviewed.

Here, VA treatment records dated from April 2007 show symptoms such as anger, irritability, flashbacks, problems sleeping, hypervigilance, tearfulness, and difficulty concentrating. A November 2007 VA treatment record documented the Veteran's report of an argument with his daughter.

In a March 2008 statement, the Veteran reported worsening psychological symptoms. He stated that he has been going to counseling for a year. He indicated that his flashbacks have increased and his survivor's guilt is at a peak. The Veteran's current wife reportedly offered to leave him, but she will stay as long as he remains in counseling and on medication for his PTSD symptoms.

In a March 2008 statement, the Veteran's spouse explained that she never knows when the Veteran will "go off." She stated that the Veteran locks "15 locks every night so he can feel safe." She also indicated that the Veteran must now sleep with the lights on. The Veteran does not get much sleep. His PTSD symptoms are triggered by certain noises and surroundings. The Veteran's spouse further reported that the Veteran is socially isolated, and when she and the Veteran go out with her friends, he is afraid to get close to anyone.

The Veteran was afforded a VA examination in March 2008, at which time he reported that he works as a fireman. He is in psychological treatment at the VA once per month, and is prescribed Prozac and Trazadone. The Veteran has not been psychiatrically hospitalized. He indicated that he sought psychological out-patient treatment because his wife threatened to divorce him. He reported that he is very irritable. He is estranged from his adult son. He has been divorced twice. The Veteran and his current wife have been married for eight years, and together for fourteen. He feels his marriage is a good one and he very much trusts his wife. The Veteran reported that there have been some continuing marital difficulties. The examiner noted that the Veteran cried when discussing his marriage. The Veteran reported that he had cut down on his heavy drinking, but continues to drink socially. He further indicated that his irritability has not caused any difficulties at work. He was charged with domestic violence in the 1990s by his second wife, and by a girlfriend. The Veteran works full-time and spends his spare time doing landscaping and remodeling work. He reported that his sleep is okay, although he experiences difficulty falling asleep. He has occasional crying spells, and survivor's guilt. He feels hopeless at times. He does a lot of volunteer work, and reported that he tries to stay busy in order to cope with intrusive thoughts. The Veteran reported that he feels people "just shit on me all the time." He stated that he was previously suicidal in 2004, but not recently. He is emotionally attached to his grandson, and is able to enjoy himself. The Veteran reported that he likes to play golf and fish with his wife; they went several times in the last year. The Veteran also went pheasant hunting last fall with brother-in-law.

The March 2008 VA examiner noted the Veteran's report that, as a fireman, he is able to block out the "bloody, gory stuff" that he sees when he comes onto a scene. He indicated that his duties as a fireman do not trigger his PTSD. The Veteran further explained that he likes the excitement of the fire department, and the work that it entails. He reports that he has the most difficulty when he is idle. Images and reports of the Iraq War trigger the Veteran's memories and nightmares of Vietnam.

The March 2008 VA examiner noted that the Veteran was casually dressed and exhibited a full affect. He was considered well-oriented. He did not exhibit psychosis, delusions, or hallucinations. His speech was normal. He did not endorse suicidal or homicidal ideation. His memory was intact and his judgment was adequate. The Veteran also reported flashbacks and nightmares. The examiner noted that the Veteran was able to maintain activities of daily living, including personal hygiene. The examiner diagnosed the Veteran with PTSD and MDD. A GAF of 66 was assigned.

VA treatment records dated in October 2008 noted that the Veteran is working very hard to get his yard ready for winter. It was further noted that the Veteran was "quite compulsive and overworks himself" to distract from Vietnam memories. A November 2008 VA treatment record notes that he continues to have nightmares and sleep problems. In February 2009, VA treatment records noted that the Veteran is tearful and upset, although things with his wife had improved. In March 2009, the Veteran reported that his PTSD symptoms come and go; although, he continued to be angry with the government. A June 2009 VA treatment record notes that the Veteran's retirement from the fire department is looming due to increased physical difficulties. A separate June 2009 VA treatment record indicated that the Veteran's wife was angry that he pushed her and called her a name; there were also some issues with a young neighbor woman, which were not explained. The Veteran is also increasingly irritable. In September 2009, the Veteran reported that he and his wife continued to argue intermittently. In a March 2010 VA treatment record, the Veteran explained that he will have to retire from the fire department after thirty years of service. He endorsed conflicts with his adult children from a previous marriage. He exhibited good grooming and hygiene, and normal speech. His affect was mood congruent. His mood was dysphoric. He had no suicidal or homicidal ideation. There was no psychosis. His insight and judgment were intact. A GAF of 58 was assigned. The treatment provider diagnosed PTSD and depression.

The Veteran was afforded another VA examination in June 2011 at which time he reported that he is not currently in psychological treatment. He sleeps from three to four hours per night, and does not feel well-rested. He experiences nightmares about military activity an average of three to four times per week. The Veteran awakens anxious and agitated several times a week. He also experiences intrusive thoughts and flashbacks. The Veteran endorsed hyperarousal symptoms; specifically, he hates crowds because they are confining and he does not feel safe. The Veteran "watches certain people when he is out in public to make sure of what they are doing and he feels on guard when in public." The Veteran reportedly hates noise, closeness, and having people behind him. He does not go to sporting events or movies. He indicated that he carries knives and guns with him all the time. He denied any hallucinations. He reported that, while in restaurants, he prefers to sit with his back to the wall and watch the door. Unpredictable loud noises are difficult for him. He is "pretty jumpy," and his wife feels that he is more jumpy now. He experiences episodes of irritability one to two times per day, and will get into verbal altercations with others; although, he does not get into physical altercations. The Veteran avoids dealing with people and avoids talking about Vietnam. He does not trust people. He reported that he used to have friends, but now does not have any. However, he later stated that he has a few friends with whom he gets together once or twice a week, although, he avoids most social situations. He feels more detached from people and is more isolated now. He stated that he is emotionally numb, except that he has a lot of anger. The Veteran has feelings of depression on most days, and he rated the severity of his depression at 7-8/10. He endorsed feelings of helplessness, worthlessness, fatigue, sadness, low energy, and guilt. He stated that he has had suicidal thoughts several times, but has made no attempts. He reported mood changes. The Veteran stated that he tries to keep busy when he is depressed. Presently, he feels more depressed than he used to be and he is unsure of why. The Veteran does not experience panic attacks. He watches television for six to eight hours per day and might do some yard work. The Veteran reported that he does not have any hobbies, and does not belong to any groups. He no longer does volunteer work. He retired from the fire department one year ago, due to heart disease and age. He now reports problems with concentration and distractibility. He denied that he had to take frequent breaks at work due to anxiety and feeling overwhelmed. The Veteran reported that, when he worked, he had some difficulty with irritability and getting along with other people. He had frequent arguments with others. The Veteran said that his difficulty with sleep affects his productivity. He has been married for eleven years. The Veteran stated that he no longer drinks every day, but will occasionally have six to seven drinks.

The June 2011 VA examiner did not note any hygiene deficits. His mood and speech were considered normal. His thought processes were goal-directed and logical. There was no evidence of hallucinations, delusions, obsessions, compulsions, or any phobias. The Veteran had increased depressed mood. He is able to maintain activities of daily living, including personal hygiene. His symptoms of depression have worsened. His thought processes and communication are not impaired. The examiner noted that the Veteran's social functioning is impaired due to his symptoms of hypervigilance and avoidance. The examiner diagnosed the Veteran with PTSD and depressive disorder, not otherwise specified (NOS). The examiner assigned a GAF of 70 due to PTSD and a GAF of 60 due to depressive disorder. The examiner noted that "[t]here is occasional decrease in work efficiency or there are intermittent periods of inability to perform occupational tasks due to PTSD signs and symptoms." He further stated that the Veteran is generally functioning satisfactorily in routine behavior, self-care, and conversation.

At the May 2013 Board hearing, the Veteran stated that he had received VA mental health treatment for PTSD since the early 1970s. He would generally be seen about once a month. He stated that his grandchildren were afraid of him and he had almost beaten his daughter in July 2012. Beginning three or four years ago, the Veteran had begun to sleep in a different room than his spouse. He felt as if he was in a near continuous state of panic. He had problems with relationships and had not spoken to his sister in years and had not talked to his youngest son in 16 years. He would go to maybe two movies a year. He would self-medicate with alcohol. He last worked in May 2009 and had stopped mainly due to his heart disability. He would shower once a week and had started doing so about three or four years prior. He would have nightmares two or three times a week. The Veteran's wife noted that the Veteran was unable to focus and was not making sense or being very logical. He was also tending to isolate himself more and more.
The Board has thoroughly reviewed the record and has given full consideration to 38 C.F.R. § 4.7 (where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned) and 38 C.F.R. § 3.102 (when there is an approximate balance of evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each issue shall be given to the veteran). In determining whether the Veteran meets the schedular criteria for an increased disability rating, the Board's inquiry is not necessarily limited to the criteria found in the VA rating schedule. See Mauerhan v. Principi, 16 Vet. App. 436 (2002) (the criteria set forth in the rating formula for mental disorders do not constitute an exhaustive list of symptoms, but rather are examples of the type and degree of the symptoms, or their effects, that would justify a particular rating).

With respect to the period dating prior to June 17, 2011, the Board concludes that a disability rating in excess of 50 percent is not warranted because this disability has not been shown to result in occupational and social impairment, with deficiencies in most areas, including judgment thinking or mood, due to such symptoms as near-continuous depression; suicidal ideation, obsessional rituals, illogical speech, near continuous panic or depression affecting the ability to function independently; spatial disorientation; neglect of personal appearance; impaired impulse control with periods of unprovoked irritability; difficulty in adapting to stressful circumstances; and the inability to establish and maintain effective relationships. 38 C.F.R. § 4.130, DC 9411. The Board has reviewed the record and finds that the evidence shows that the Veteran's PTSD and MDD symptoms are not of such severity as to warrant a 70 percent evaluation; and that clearly, total social and occupational impairment is not demonstrated.

The Board recognizes that the Veteran reported irritability, including an episode when he pushed his wife, and difficulty in adapting to stressful circumstances (including work or a work-like setting). See, e.g., the VA treatment records dated November 2007 & June 2009; see also the VA examination report dated March 2008. Crucially, there is no evidence that the symptoms endorsed by the Veteran rose to the level of impaired impulse control such as unprovoked irritability with periods of violence as is contemplated for the assignment of a 70 percent rating, or intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene), as is contemplated for the assignment of a 100 percent rating. Moreover, although 'difficulty in adapting to stressful circumstances' is a criterion contemplated for the assignment of a 70 percent rating, the Veteran's symptoms must also cause the occupational and social impairment in the referenced areas. See Vazquez-Claudio, supra. Significantly, there is no indication that his occupational and social functioning was demonstrative of deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, as is necessary to support a 70 percent evaluation prior to June 17, 2011.

However, after a thorough review of the evidence, the Board finds that the impact of the Veteran's PTSD with MDD on his social and industrial functioning is sufficient to approximate the degree of impairment contemplated by a 70 percent rating from June 17, 2011, the date of the VA examination that documented increasing psychological symptomatology. Specifically, the June 2011 VA examiner documented that there was suicidal ideation, increasing social isolation and irritability, and deepening depression. In this regard, the Board acknowledges that the GAF scores assigned to this disability throughout the appeal period have reflected levels of moderate impairment. However, it is the symptoms specifically noted at the Veteran's evaluation and treatment records that are of the utmost significance.

The Board finds that the symptomatology associated with the Veteran's service-connected PTSD with MDD supports the assignment of a 70 percent rating from June 17, 2011, because this disability has been shown to result in occupational and social impairment, with deficiencies in most areas, such as work, family relations, and mood, due to such symptoms as near-continuous depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control with periods of unprovoked irritability with outbursts of anger; difficulty in adapting to stressful circumstances; and the inability to establish and maintain effective relationships. 38 C.F.R. § 4.130, DC 9411. Specifically, these symptoms have been endorsed by the Veteran and documented by the June 2011 VA examiner. The Board has thoroughly reviewed the record and finds that the medical evidence reflects that the Veteran's psychological symptoms have been relatively consistent since June 17, 2011, and are of such severity as to warrant a 70 percent evaluation from the June 17, 2011 VA examination.

Critically, total occupational and social impairment has not been shown at any time during the appeal period. Moreover, the presence of certain symptoms is not necessarily determinative. These symptoms must also cause the occupational and social impairment in the referenced areas. See Vazquez-Claudio v. Shinseki, 713 F.3d 112 (Fed. Cir. 2013). Significantly, there is no indication of total occupational and social impairment in the record.

In this regard, the Board recognizes that the Veteran was not employed following his 2010 retirement. However, the medical evidence of record does not indicate that the Veteran's psychological symptoms alone caused total occupational and social impairment during the period in question. Although he socially isolated himself, the Veteran did maintain a few friendships. Moreover, his reported history of the inability to establish and maintain effective relationships, irritability, and suicidal ideation are specifically contemplated in the criteria for a 70 percent rating from June 17, 2011. Moreover, he has consistently demonstrated appropriate hygiene, and his thought processes have been intact throughout the appeal period. Crucially, in this case, the Veteran's symptoms shown in the record do not equate to total occupational and social impairment at any time during the appeal period.

Accordingly, the Board concludes that the totality of the evidence of record has not shown that the Veteran's PTSD warrants a disability rating in excess of 50 percent prior to June 17, 2011. However, the evidence of record does show that the Veteran's PTSD with MDD warrants a 70 percent evaluation, but no higher, from June 17, 2011, but no higher. The claim is granted to that extent.

Additionally, the Board finds that the Veteran's PTSD with MDD does not warrant referral for extraschedular consideration. In exceptional cases where schedular ratings are found to be inadequate, consideration of an extraschedular disability rating is made. 38 C.F.R. § 3.321(b)(1). There is a three-step analysis for determining whether an extraschedular disability rating is appropriate. Thun v. Peake, 22 Vet. App. 111 (2008). First, there must be a comparison between the level of severity and symptomatology of a veteran's service-connected disability and the established criteria found in the rating schedule to determine whether a veteran's disability picture is adequately contemplated by the rating schedule. Id.

If the disability picture is not adequately contemplated by the rating schedule, the second step is to determine whether the claimant's exceptional disability picture exhibits other related factors identified in the regulations as "governing norms." Id; see also 38 C.F.R. § 3.321(b)(1) (governing norms include marked interference with employment and frequent periods of hospitalization). If the factors of step two are found to exist, the third step is to refer the case to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for a determination whether, to accord justice, the claimant's disability picture requires the assignment of an extraschedular rating. Id.

With respect to the first prong of Thun, the evidence in this case does not show such an exceptional disability picture that the available schedular evaluations for PTSD and MDD are inadequate. A comparison between the level of severity and symptomatology of the Veteran's PTSD with MDD with the established criteria shows that the rating criteria reasonably describe the Veteran's disability level and symptomatology. Specifically, during the subject time period, the Veteran reported multiple psychiatric symptoms, including depression, anxiety, social impairment, lack of concentration, hypervigilance, sleep impairment, and irritability. The current disability ratings contemplate these and other psychiatric symptoms. Thus, the Veteran's current schedular rating under DC 9411 is adequate to fully compensate him for the disability on appeal, and referral for extraschedular consideration is not warranted.

Under Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. However, there are no symptoms caused by this service-connected disability that have not been attributed to and accounted for by a specific service-connected disability. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed to the combined effect of multiple conditions.

As a final point, the Board notes that the matter of the Veteran's entitlement to a total disability rating due to individual unemployability (TDIU) may be considered a component of a rating claim when such is expressly raised by the Veteran or reasonably raised by the record. See Rice v. Shinseki, 22 Vet. App. 447 (2009). Here, the Veteran formally raised a claim of entitlement to TDIU due to PTSD and ischemic heart disease by means of a VA Form 21-8940 received in October 2014. The current appeal as to the rating for PTSD prior to March 17, 2013 is limited to a time period before the filing of the TDIU claim. Crucially, although it is undisputed that the Veteran's PTSD provided some occupational impairment during the period under consideration, there is no evidence that the Veteran's PTSD, alone, rendered him actually or effectively unemployable prior to March 17, 2013. In fact, the Veteran has indicated that he stopped working primarily due to his heart disability. See, e.g., the VA examination report dated June 2011. Accordingly, the Board need not address the matter of the Veteran's unemployability due to PTSD in conjunction with the current claim for increased rating.

ORDER

A disability rating in excess of 50 percent for PTSD with MDD, prior to June 17, 2011, is denied.

A disability rating of 70 percent, but no higher, for PTSD with MDD is granted from June 17, 2011, to March 17, 2013, subject to the law and regulations governing the payment of monetary benefits.

____________________________________________
Michael J. Skaltsounis
Acting Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs